1-800-LAW-FIRM
Alyson Oliver (P55020)
Ari Kresch (P29593)
24100 Southfield Road Ste. 305
Southfield, MI 48075
1-800-LAW-FIRM

## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

Case No.

CAITLIN DEMETSENARE,
          Individually and all others
          Similarly situated,
             Plaintiffs,

COMPLAINT FOR VIOLATION OF:

     Vs.

RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT,
CONSUMER PROTECTION ACT,
UNJUST ENRICHMENT,

STEFANI GERMANOTTA,
          aka LADY GAGA;
ATE MY HEART, INC.,
          A California Corporation,
MERMAID MUSIC, L.L.C;
          A New York Corporation,
HOUSE OF GAGA PUBLISHING, INC.
          A New York Corporation,
BRAVADO INTERNATIONAL GROUP
MERCHANDISING SERVICES INC.,
          A Foreign Corporation,
LIVE NATION ENTERTAINMENT INC.,
          A Delaware Corporation,
LIVE NATION MERCHANDISE INC.,
          A Delaware Corporation,
UNIVERSAL MUSIC GROUP INC.,
          A Delaware Corporation.
               Defendants.

**DEMAND FOR JURY TRIAL**

_____

1

Plaintiff Caitlin DeMetsenare, ("Plaintiffs"), individually and on behalf of all others similarly situated, by their undersigned counsel, allege the following upon personal knowledge as to their own acts and, as to all other allegations, upon information and belief and an investigation by counsel, which included review of publicly available documents, and interviews with confidential witnesses.

## INTRODUCTION

*"Every man must decide whether he will walk in the light of creative altruism or in the darkness of destructive selfishness".[1]*

Helping those less fortunate than ourselves is laudable, especially when the assistance is so timely, soneeded and so pervasive.  But when the good deed of giving is tarnished by inexplicable contradictions of fact and numbers, everyone from the donor to the recipient and those in between are in jeopardy of losing the benefit of the intended altruism.

## NATURE OF THE ACTION

1.     This is a class action brought individually by Plaintiff and on behalf of a class of persons similarly situated, ("Class Members"), who sent money to or through Defendant Stefani Germonatta, ("Lady Gaga") and/or other named Defendants (collectively known as "Defendants") by way of web, telephone, or mail transaction for the "Lady Gaga Japan Earthquake Relief Wristband" ("Wristband") as referred to on Defendant's marketing website: ladygaga.shop.bravadousa.com ("Website"),  four years from the first-filed complaint in this action until the final disposition of this and any and all related cases (the "Class Period").

2.     On March 11, 2011 a 9.0 magnitude earthquake struck Northeast Japan near Sendai triggering a tsunami wave and causing widespread devastation.

---

[1] Dr. Martin Luther King, Jr.

3.     Lady Gaga is an undeniably talented international celebrity, providing music and entertainment to millions of dedicated fans who support her and enjoy her music.

4.     Defendants, with the support of Lady Gaga, designed, marketed and distributed the Wristband to the public in a well publicized effort to alleviate the destruction caused by the earthquake in Japan. Defendants used the Wristband to encourage donations to this cause ("Relief Effort").

5.     Defendant Lady Gaga with the other Defendants affirmatively represented, via internet video postings and various other media outlets, "all proceeds" from the Wristband would go to aid in Japan by stating, "All proceeds go directly to Japan Relief Efforts," ("Subject Funds").

6.     Plaintiffs allege Defendants misrepresented to individuals and to the public at large, the nature of the funds tendered for the Wristbands by representing that "all proceeds" derived from the Wristbands would be donated to the Relief Effort. Defendants failed to allocate the funds as claimed.

7.     Specifically, Defendants falsely represented that all proceeds derived from the Wristbands would be and later was donated to the Relief Efforts.

8.     A portion of the first five dollars of each donation were retained by Defendants. These funds are included in the "Subject Funds".

9.     Not only did Defendants retain a portion of the first five dollars of the donation as set forth above, they also added additional "shipping charges" in excess of the amount required to ship the Wristbands based on their weight, and retained a portion of the shipping charges. These funds are included in the "Subject Funds".

10.     Additionally, consumers were taxed for their donations wrongfully, and the wrongfully levied taxes were not forwarded to the appropriate taxing authorities in the appropriate time frame.  These funds are included in the "Subject Funds".

11.     Later, Defendants claimed that they had raised a sum certain for the relief effort when all the funds touted as having been raised for the relief effort were not donated to the relief effort.

12.     Defendants made materially false and misleading representations as set forth above when they (1) retained at least a portion of the first five dollars from each transaction instead of donating all proceeds to the Japan Relief Efforts; (2) artificially inflated reports of the total donations by including the portion of funds retained by Defendants in their calculations; (3) represented that the cost to ship the bracelets was a certain amount and collected same from consumers, when it was not and (4) levied taxes against consumers for their donations that are inherently not taxable, and retained those funds.

13.     Defendants then used the inflated financials to solicit additional 'donations.'  The additional donations were then treated in kind as set forth above.

14.     Defendants failed to perform as advertised.  Defendants only sent a portion of the Subject Funds, if any, to the Japan Relief Effort.

15.     This deceptive advertising campaign was the exclusive advertising mechanism for the Lady Gaga Wristband.

**JURISDICTION AND VENUE**

16.     Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332(d), because there are at least 100 Class Members in the proposed Class, the combined claims of proposed Class Members exceed $5,000,000 exclusive of interest and costs, and at least one Class Member is a citizen of a state other than Defendants' state of citizenship.

17.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted herein occurred in this district.  Venue is proper pursuant to 28 U.S.C. § 1391(c) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avail themselves of the

4

markets in this District, through the promotion, sale, and marketing of their services and products in this District.

18.     Additionally, there is complete diversity of parties and the amount in controversy exceeds $75,000.00 causing venue to be proper pursuant to 28 U.S.C. §1332(a).

19.     This matter is properly brought in Federal Court due to federal question jurisdiction arising from claims brought under 18 U.S.C. § 1961, *et seq.*

## THE PARTIES

20.     During the Class period, Plaintiff and Class Members utilized the Lady Gaga Website www.ladygagastore.bravadousa.com (Website) and phone numbers (Phone) to donate Subject Funds to the Japan Relief Effort.  Plaintiff and Class Members suffered an injury in fact caused by the unfair, deceptive and misleading practices set forth in this complaint.

21.     Plaintiff Caitlin DeMetsenare is a resident of the County of Oakland, State of Michigan, and the events set forth in this Complaint took place therein.

22.     Defendant Stefani Germanotta a.k.a "Lady Gaga" is a citizen of the United States, and upon information and belief, the State of California, currently residing in Los Angeles, California.

23.     Defendant Ate My Heart, Inc., is a California Corporation who, upon information and belief, conducts business nationally.

24.     Defendant Mermaid Music, Inc., is a New York Corporation who, upon information and belief, conducts business nationally.

25.     Defendant House of Gaga Publishing, Inc., is a New York Corporation who, upon information and belief, conducts business nationally.

26.     Defendant Bravado International Group Merchandising Services Inc., is a foreign Corporation who, upon information and belief, conducts business internationally.

27.     Defendant Live Entertainment Inc. and Live Nation Merchandise, Inc. are Delaware Corporations who, upon information and belief, conduct business nationally.

28.     Defendant Universal Music Group Inc. is a Delaware Corporation, who, upon information and belief, conducts business nationally.

## DEFENDANTS' UNLAWFUL CONDUCT

29.     Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

30.     Defendants participated in a scheme of falsely misleading Plaintiff and Class Members, ad nauseum, by misrepresenting the allocation of funds derived from the Wristbands. Defendants represented all proceeds from the Wristbands would be donated to the Japan Relief Effort, while knowing this statement lacked truthfulness for the reasons set forth above.

31.      Defendant Lady Gaga personally and repeatedly stated: "I Designed a Japan Prayer Bracelet. Buy It/Donate here and ALL proceeds will go to Tsunami Relief Efforts. Go Monsters," and "Little Monsters, show your support for Japan with this 'We Pray for Japan' wristband! Choose your price to add an additional donation with your wristband," and "All proceeds go directly to Japan Relief Efforts."

32.     Defendant Lady Gaga contracted with corporate Defendants, Ate My Heart, Inc., Mermaid Music, Inc. and House of Gaga Publishing, Inc. along with other named Defendants for services rendered in this common scheme.

33.     Defendant Bravado International Group Merchandising Services Inc. and Defendant Universal Music Group Inc. maintained the website, phone number, and provided customer service support. Defendant Bravado International Group Merchandising Services Inc. and Defendant Universal Music Group Inc. physically took web, mail and phone orders generated by Defendant Lady Gaga's statements, posted the sales on their websites and received the initial cash flow generated by the Wristband transactions.

34.     Defendant Live Entertainment Inc. and Live Nation Merchandise, Inc., in simultaneous conformity with the Defendants listed in the paragraphs above, maintained the website, phone number, and provided customer service support.  Defendant Live Entertainment

Inc. and Live Nation Merchandise, Inc physically took web, mail and phone orders generated by Defendant Gaga's statements, posted the sales on their websites and received the initial cash flow generated from the Wristband transactions.

## CLASS ALLEGATIONS

35.     Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

36.     Plaintiff brings this action on her own behalf and as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs seek certification of the following Class:

> All persons in the United States who have sent money to or through Defendants by way of web, telephone, or mail transaction for the "Lady Gaga Japan Earthquake Relief Wristband" ("Wristband") as referred to on Defendant's marketing website: ladygaga.shop.bravadousa.com ("Lady Gaga Website") from four years from the first-filed complaint in this action until the final disposition of this and any and all related cases.

37.     The abundance of Class Members renders joinder of all Class Members individually, in one action or otherwise, impractical.

38.     This action involves questions of law and fact common to Plaintiff and Class Members including:

(a)     Whether Defendants violated the Racketeering Influenced and Corrupt Organization provisions codified under 18 U.S.C. § 1961 *et seq*.;

(b)     Whether Defendants violated the Michigan Consumer Protection Statute;

(c)     Whether Defendants violated any State Consumer Protection Statute;

(d)     Whether Defendants were unjustly enriched as a result of their retention of the benefits conferred by Plaintiffs and Class Members;

(e)     Whether Plaintiff and Class Members sustained damages and, if so, the proper measure of damages, restitution, equitable or other relief, and the amount and nature of such relief.

39.     Plaintiff understands and are willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class.  Plaintiff will fairly and adequately

protect the interests of the Class and lack interests adverse to or which directly conflict with the interests of the Class Members.

40.      Plaintiff has engaged legal counsel, experienced in complex class action litigation, to prosecute this action. Counsel shall effectively assert, protect, and represent the rights of Plaintiffs and the absent Class Members.

41.      Plaintiff's claims are typical of those of the absent Class Members because Plaintiffs and the Class Members each sustained damages arising from Defendants' wrongful conduct, as alleged more fully herein.

42.      This action is brought under Fed. R. Civ. P. 23 because Defendants acted on grounds generally applicable to all Class Members.

43.      A class action promotes an efficient and economical judicial determination of the common legal and factual issues essential to this case over piecemeal individual determinations.

44.      Plaintiff knows of no difficulty encountered in the management of this litigation precluding maintenance as a class action.

## CHOICE OF LAW
### Michigan's Substantive Law Applies
### to the Nationwide Class Members

45.      Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

46.      Michigan's substantive laws apply to the proposed nationwide Class, as set forth in this complaint, because Plaintiff properly brings this action in this District.  A United States District Court sitting in diversity presumptively applies the substantive law of the State in which it sits.

47.      The Court may constitutionally apply Michigan's substantive laws to Plaintiff and Nationwide Class Members' claims under the Due Process Clause of the Fourteenth Amendment, section1, and the Full Faith and Credit Clause, art IV., § 1, of the United States Constitution.   The claims asserted by Plaintiff contain significant contact, or significant

aggregation of contacts, to ensure an adequate state interest and supports the choice of Michigan state law as just and reasonable.

48.     Defendants conduct substantial business in Michigan providing Michigan with an interest in regulating Defendants' conduct under Michigan laws.  Defendants' decision to regularly conduct business in Michigan and avail itself of Michigan's laws render the application of Michigan law to the claims at hand constitutionally permissible.

49.     The injury to Plaintiff and a significant number of proposed Class Members by virtue of the misconduct alleged, occurred in Michigan.  Plaintiff DeMetsenare resides in Michigan and attempted to donate funds to the Relief Effort in Michigan.  A substantial number of members of the proposed Nationwide Class reside in Michigan and attempted to donate funds to the Relief Effort in Michigan.

50.     The application of Michigan's laws to the proposed Nationwide Class Members is also appropriate under Michigan's choice of law rules because Michigan has significant contacts to the claims of the Plaintiffs and the Nationwide Class Members.

## CAUSES OF ACTION

### COUNT I

### For Violation of RICO, 18 U.S.C. § 1961, *et seq*.

51.     Plaintiff and the Class Members incorporate by reference all preceding and succeeding paragraphs.

52.     Defendants are "persons" as defined by 18 U.S.C. § 1961(3).

53.      At all relevant times, Defendants comprised an association-in-fact constituting an "enterprise" engaged in interstate commerce as defined by 18 U.S.C. § 1961(4).

54.      The association-in-fact provides Wristbands in exchange for funds on the premise that the Subject Funds would be donated in totality toward the Japan Relief Effort.

55.     Each category of RICO person played a role in the racketeering activity distinct from the undertakings of the remaining categories of persons.

56.     Each RICO person committed predicate acts of racketeering, though only the combination of the actions of all of the persons was sufficient to enable the scheme at issue in this case to succeed.

57.     Defendants and the other RICO persons identified herein occupied continuing positions within the group consistent with the organizational structure. The various elements of the association function as a continuing unit both to (1) maintain the scheme set forth in this complaint and (2) profit by providing Wristbands to persons not members of this class, on the false premise that the proceeds received from the Wristbands would be contributed to the Japan Relief Effort.

58.     The enterprise exists separate and apart from the alleged pattern of racketeering activity, in that the members of the association-in-fact engage in other activities besides those at issue in this complaint (including producing, manufacturing and selling music and other products to persons not Class Members, and producing, manufacturing and selling music and other products to persons who are Class Members).

59.     Lady Gaga, Ate my Heart Inc., and House of Gaga Publishing, Inc. ("The Gaga Defendants") as the entities in control of the association-in-fact, oversee and coordinate the commission of the predicate offenses, in addition to other activities of the association-in-fact, on an on-going basis.

60.     The Gaga Defendants wielded control over the affairs of the association-in-fact by:

a.      Exercising the authority to approve or disapprove all written and visual marketing materials shown to victims;

b.      Actually providing the Wristband that the victims ordered, and thereby assuming any risk and earning the profit attributable to such provision;

c.      Receiving all Subject Funds from the Plaintiffs and Class Members, and paying other members out of such funds, as the Gaga Defendants deemed such compensation to be due and owing or otherwise to be appropriately paid;

d.      Otherwise having and exercising authority to control the essential activities

10

of the association-in-fact.

61.     The typical affairs of the Gaga Defendants do not include: (a) the direct sale Wristbands to consumers; or (b) the preparation of marketing material for the Wristbands. The other named Defendants performed those functions as members of the association-in-fact.

62.     The other named Defendants disseminated the marketing materials and conducted interactions with the victims. These Defendants misrepresented the allocation of the proceeds received for each Wristband to the Class Members.

63.     The Gaga Defendants directed the other named Defendants to communicate the substance of the misrepresentation to the Class Members, including methods used to induce Class Members to trust the other Defendants, and the process used to induce Class Members into relinquishing the Subject Funds at issue.

64.     The false information provided to the Class Members concerning the destination and percentage of the Subject Funds allocated towards the Japan Relief Effort, operated to transform the charitable effort into a device primarily used to obtain the Subject Funds.

65.     Lady Gaga designed this scheme, communicated the process to her staff, the other members of the association-in-fact, and staff for other members of the association-in- fact.

66.     The Defendants participating in the operation of the enterprise were aware of the fraudulent scheme employed to induce Plaintiff and Class Members to relinquish the Subject Funds.

67.     The pattern of racketeering consisted of: (a) mail fraud, in violation of 18 U.S.C. § 1341; and (b) wire fraud, in violation of 18 U.S.C. § 1343.

68.     The mail and wire communications by which each Defendant perpetuated their scheme included, without limitation:

a.     Defendants use of the interstate mails and wires in publishing marketing materials to Plaintiff and Class Members;

b.     Letters and materials from Defendants to Plaintiffs and Class Members, transmitting the Wristbands themselves and documents relating to the Wristbands;

11

c.      Communications via email and over the worldwide web, in particular the dissemination via the worldwide web of all statements regarding the allocation of the Subject Funds;

d.      Interstate telephone calls made by Plaintiff and Class Members to Defendants involving relinquishment of the Subject Funds, questions, problems, complaints or requests for withdrawals regarding the transaction and product, and Defendants' responses by interstate telephone calls and the interstate use of the U.S. mails, which telephone calls are invited by Defendants, who maintain the toll-free telephone number of 1-866-66-SHIRT which customers are invited to call to effectuate the relinquishment of funds by the Class Members.

69.      Defendants committed the following acts which constitute predicate acts of racketeering activity within the meaning of 18 U.S.C. §1961. Each and every one of these acts is in pursuance of the RICO scheme at issue in this case.

a.      Defendants maintain a continuous presence on the world wide web, at www.ladygagastore.bravadousa.com (Website). Through that website, Defendants invite interstate wire communications between the Class Members and Defendants, to effectuate the relinquishment of Subject Funds.

b.      The Gaga website invites and is itself a series of interstate wire communications, through the world wide web, made between Gaga, Defendants, other named Defendants and Class Members on a continuing basis. The content of those communications includes the following statements:

1.      "I Designed a Japan Prayer Bracelet. Buy It/Donate here and ALL proceeds will go to Tsunami Relief Efforts. Go Monsters," emphasis not added.

2.      "Little Monsters, show your support for Japan with this 'We Pray for Japan' wristband! Choose your price to add an additional donation with your wristband,"

3.      "All proceeds go directly to Japan Relief Efforts."

4.      Communicating that the Subject Funds raised in sum certain were being donated in whole to the Relief Effort.

c.      Defendants provided this product to create a scheme inducing Class Members to tender funds to them in exchange for a Wristband under the false presumption the Subject Funds constituted a donation to earthquake and tsunami victims.

d.      The interstate wire transmissions conducted via the world wide Gaga website of marketing, selling and servicing a product/service contained materially false statements regarding the donation of funds to the  Japan Relief Effort and the percentage of proceeds derived from each Wristband transaction allocated to the Japan Relief Effort.

70.      Defendants' actions constitute a pattern of racketeering activity because they were (1) related in purpose (*i.e.*, to garner the relinquishment of funds on false statements, and to profit from such sales); (2) continued unabated, and (3) victimized thousands of persons.

71.      Defendants' conduct injured Plaintiff and Class Members in their business or property, as defined by 18 U.S.C.§ 1964(c), by reason of the Defendants' racketeering activities.

72.      Pursuant to 18 U.S.C. § 1964(c), Plaintiff and Class Members are therefore entitled to recover treble damages, attorneys' fees and appropriate equitable relief.


**WHEREFORE**, Plaintiff and the Class demand judgment against Defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.


## COUNT II

### For Conspiracy to violate RICO

73.      Plaintiff and the Class Members incorporate by reference all preceding and succeeding paragraphs.

13

74.     Defendants conspired with one another, and all of them, to commit the violations of 18 U.S.C. §1962 alleged in count I of this complaint.

**WHEREFORE,** Plaintiff and the Class demand judgment against Defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT III

### Violation of State Consumer Protection Statutes

75.     Plaintiff and the Class Members incorporate by reference all preceding and succeeding paragraphs.

76.     Plaintiff and Class Members acted as consumers, purchasing the Wristband primarily for personal, family or household purposes.  The Wristband qualifies as a "good," or "merchandise," under various state Consumer Protection Statutes and the Class Members' purchases of the Wristbands constitute a "transaction".

77.     Defendants, in connection with the sale of the Wristbands, engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices.  Defendants stated all proceeds received for the Wristbands would be given to the Japan Relief Effort, despite knowledge that portions of the subject funds would not be given to the Japan Relief Effort.

78.     In furtherance of their scheme to defraud consumers, Defendants failed to disclose this material fact to Plaintiffs and Class Members.  Defendants represented that the Wristband transaction conferred a benefit and use that did transpire.

79.     Defendants concealed, suppressed or omitted material facts with the intent that Plaintiffs and Class Members rely upon such concealment, suppression or omissions. Defendants' objectively deceptive conduct had the capacity to deceive reasonable consumers under the circumstances.  Defendants' retention of subject funds received instead of donating the funds to the Relief Effort constitutes a material fact a reasonable and/or unsophisticated

14

consumer would attach importance to at the time of purchase and would influence consumers' choice to purchase the Wristbands.

80.     Defendants' general course of conduct impacted the public because the acts were part of a generalized course of conduct affecting numerous consumers.

81.     Defendants' conduct, which included deception, frauds, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts caused and resulted in injury in fact and an ascertainable loss of money or property to Plaintiffs and Class Members.  The resulting injury to Plaintiff and Class Members was reasonably foreseeable by Defendants.

82.     Plaintiff, on behalf of herself and Class Members, seek to recover the damages suffered, including actual and punitive damages, restitution of all monies wrongfully acquired by Defendants as a result of this misconduct, injunctive and declaratory relief, attorney fees and costs of suit and other non-monetary relief as appropriate.

83.     The aforementioned practices by Defendants violate the following consumer protection laws:

| State | Citation |
| --- | --- |
| Alabama | Ala. Code §§ 8-19-1 to 8-19-15 |
| Alaska | Alaska Stat. §§ 45.50.471 to 45.50.561 |
| Arizona | Ariz. Rev. Stat. Ann. §§ 44-1521 to 44-1534 |
| Arkansas | Ark. Stat. Ann. §§ 4-88-101 to 4-88-115 |
| California | Cal. Civ. Code §§ 1750 to 1784 |
|  | Cal. Bus. & Prof. Code §§ 17200 to 17209 |
| Colorado | Col. Rev. Stat. §§ 6-1-101 to 6-1-1001 |
| Connecticut | Conn. Gen. Stat. §§ 42-110a to 42-110q |
| Delaware | Del. Code. Ann. tit. 6, §§ 2501 to 2598 |
| District of Columbia | D.C. Code Ann. §§ 28-3901 to 28-3909 |

15

| | |
|---|---|
| Florida | Fla. Stat. Ann. §§ 501.201 to 501.976 |
| Georgia | Ga. Code Ann. §§ 10-1-370 to 10-1-438 |
| Hawaii | Hawaii Rev. Stat. §§ 481A to 481X |
| Idaho | Idaho Code §§ 48-601 to 48-619 |
| Illinois | Ill. Rev. Stat. ch. 815, §§ 505 to 601 |
| Indiana | Ind. Code Ann. §§ 24-5-0.5 to 24-5-25 |
| Iowa | Iowa Code Ann. §§ 714.16 to 7.14.26, 714A, B, D |
| Kansas | Kan. Stat. Ann. §§ 50-623 to 50-6107 |
| Kentucky | Ky. Rev. Stat. §§ 367.110 to 367.993 |
| Louisiana | La. Rev. Stat. Ann. §§ 51:1401 to 51:1425 |
| Maine | Me. Rev. Stat. Ann. tit. 5, §§ 205A to 214 |
| | Me. Rev. Stat. Ann. tit. 10, §§ 1211 to 1216 |
| Maryland | Md. Com. Law Code Ann. §§ 13-101 to 13-501 |
| Massachusetts | Mass. Gen. Laws Ann. ch 93A §§ 1 to 11 |
| Michigan | Mich. Comp. Laws §§ 445.901 to 445.922 |
| Minnesota | Minn. Stat. Ann. §§ 325D.09 to 325D.16 |
| | Minn. Stat. Ann. §§ 325D.43 to 325D.48 |
| | Minn. Stat. Ann. §§ 325F.67 to 325F.99, 325G |
| Mississippi | Miss. Code. Ann. §§ 75-24-1 to 75-24-175 |
| Missouri | Mo. Rev. Stat. §§ 407.010 to 407.1355 |
| Montana | Mont. Code. Ann. §§ 30-14-101 to 30-14-143 |
| Nebraska | Neb. Rev. Stat. §§ 59-1601 to 59-1623 |
| | Neb. Rev. Stat. §§ 87-301 to 87-306 |
| Nevada | Nev. Rev. Stat. §§ 598.0903 to 598A |
| New Hampshire | N.H. Rev. Stat. Ann. §§ 358-A:1 to 358-A:13 |

| | |
|---|---|
| New Jersey | N.J. Stat. Ann. §§ 56:8-1 to 56:8-184 |
| New Mexico | N.M. Stat. Ann. §§ 57-12-1 to 57-12-26, 12B |
| New York | N.Y. Gen. Bus. Law §§ 349 to 350-f-1 |
| North Carolina | N.C. Gen. Stat. §§ 75-1 to 75-115 |
| North Dakota | N.D. Cent. Stat. §§ 51-15-01 to 51-15-11 |
| Ohio | Ohio Rev. Code Ann. §§ 1345.01 to 1345.99 |
| | Ohio Rev. Code Ann. 4165.01 to 4165.04 |
| Oklahoma | Okla. Stat. Ann. tit. 15, §§ 751 to 799 |
| | Okla. Stat. Ann. tit. 78, §§ 51 to 55 |
| Oregon | Or. Rev. Stat. §§ 646.605 to 646.656 |
| Pennsylvania | Pa. Stat. Ann. tit. 73, §§ 201-1 to 210-6 |
| Rhode Island | R.I. Gen. Laws §§ 6-13.1-1 to 6-13.1-28 |
| South Carolina | S.C. Code §§ 39-5-10 to 39-5-170 |
| South Dakota | S.D. Codified Laws Ann. §§ 37-24-1 to 37-24-48 |
| Tennessee | Tenn. Code Ann. §§ 47-18-101 to 47-18-5304 |
| Texas | Tex. Bus. & Com. Code Ann. §§ 17.01 to 17.904 |
| Utah | Utah Code Ann. §§ 13-11-1 to 13-11-23 |
| Vermont | Vt. Stat. Ann. tit. 9, §§ 2451 to 2480n |
| Virginia | Va. Code §§ 59.1-196 to 59.1-207 |
| Washington | Wash. Rev. Code §§ 19.86.010 to 19.86.920 |
| West Virginia | W. Va. Code §§ 46A-6-101 to 46A-6-110 |
| | W. Va. Code §§ 46A-7-101 to 46A-7-115 |
| Wisconsin | Wis. Stat. §§ 100.01 to 100.55 |
| Wyoming | Wyo. Stat. §§ 40-12-101 to 40-12-509 |

17

**Count IV**

**For Unjust Enrichment**

84.     Plaintiff and the Class incorporate by reference herein all preceding and succeeding paragraphs.

85.     The actions of Defendants, in creating and executing a scheme by which Defendants provided Class Members Wristbands that were and are *per se* unsuitable for the marketed purpose; the purpose described as a donation of all proceeds to help earthquake and tsunami victims, unjustly enriched Defendants with millions of dollars at the expense of the Class Members.

86.     The actions of Defendants, in creating and executing a scheme whereby Class Members were charged shipping costs in an amount in excess of funds expended in shipping costs unjustly enriched Defendants with millions of dollars at the expense of the Class Members.

87.     The actions of Defendants, in charging, collecting and retaining sales tax on the entirety of the transactions unjustly enriched Defendants at the expense of Class Members.

88.     The actions of Defendants in creating and executing this scheme are wrongful, and Defendants are not entitled to retain the proceeds derived from this scheme.

89.     As a result, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and the Class Members each demand judgment in their favor as against all of the Defendants, individually, jointly, and severally, as follows:

a. A determination that this action proceed as a class action and Plaintiff adequately represents the Class;

b. For compensatory, consequential and special damages in amounts proved, as well as for statutory damages, including a return of all amounts paid for the products sold by Defendants to the Plaintiffs and the Class Members;

c. For interest thereon, in the maximum amount allowable under applicable law;

d. For delay damages thereon, in the maximum amount allowable under applicable law;

e. For costs of suit, in the maximum amount allowable under applicable law;

f. For punitive damages, to the maximum amount permitted under applicable law;

g. For treble damages, to the maximum amount permitted under applicable law;

h. For an award of attorney's fees and costs, to the maximum amount allowable under applicable law;

i. For an accounting providing the information requested and a return or turnover to Plaintiffs and Class Members of all monies received or profits earned by Defendants that were not given as promised to the Relief Effort;

j. For injunctive relief, restraining and enjoining Defendants from continuing to operate their fraudulent scheme; and

k. For such other and further relief for Plaintiffs and the Class as this Honorable Court shall deem just.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class Members demand trial by jury as to all matters and issues so triable.

June 24, 2011                                      1-800-LAW-FIRM
                                                   /s/Alyson Oliver
                                                   /s/Ari Kresch
                                                   Attorneys for Plaintiffs
                                                   24100 Southfield Road Ste. 305
                                                   Southfield, MI 48075
                                                   1-800-Law-Firm
                                                   aoliver@1800lawfirm.com