OLIVER LAW GROUP PC
Alyson Oliver (P55020)
950 W. University Drive, Suite 200
Rochester, MI 48307

**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

───────────────────────────────────────────

CAITLIN DEMETSENARE,
      Individually and all others
      Similarly situated,
          Plaintiffs,

                              Case No. 11-12753
                              Hon. Bernard Friedman

      Vs.

STEFANI GERMANOTTA,
         a.k.a. LADY GAGA;
ATE MY HEART, INC.,
         A California Corporation,
MERMAID MUSIC, L.L.C;
         A New York Corporation,
HOUSE OF GAGA PUBLISHING, INC.
         A New York Corporation,
BRAVADO INTERNATIONAL GROUP
MERCHANDISING SERVICES INC.,
         A Foreign Corporation,
LIVE NATION ENTERTAINMENT INC.,
         A Delaware Corporation,
LIVE NATION MERCHANDISE INC.,
         A Delaware Corporation,
UNIVERSAL MUSIC GROUP INC.,
         A Delaware Corporation.
                Defendants.

───────────────────────────────────────────

**DECLARATION OF ALYSON OLIVER IN SUPPORT OF**
**FINAL APPROVAL OF THE SETTLEMENT, CERTIFICATION OF THE**
<u>**CLASS AND AWARD OF ATTORNEY'S FEES AND EXPENSES**</u>

I, Alyson Oliver, do hereby state, under the penalties of perjury, as follows:

1

1.  I am the principal in the law firm of The Oliver Law Group, P.C. ("Oliver Firm"), and serve as lead counsel ("Plaintiff's Counsel" or "Counsel") for lead plaintiff Caitlin DeMetsenare ("Plaintiff"), and preliminarily approved lead counsel for the settlement class ("Settlement Class" or "Class") defined below. Counsel's resume is filed herewith attached as Exhibit A.

2.  This declaration is submitted (i) in support of final approval of the proposed settlement (the "Settlement") of this class action (the "Action"), resolving all of the claims alleged against each of the defendants[1]; (ii) in support of certification of the Class[2] for purposes of settlement; and (iii) in support of Plaintiffs Counsel's application for an award of fees in the amount of $104,370.00, expenses in the amount of $10,710.74.

3.  After conducting informal and expedited discovery, the parties executed a Stipulation of Settlement ("Stipulation"). The Court preliminarily approved the Settlement, as set forth in the Stipulation, on June 25, 2012—finding it fair, reasonable, and adequate—and directed the parties to notify the Class of the Settlement Terms. Counsel for the parties subsequently notified the Class of the terms of the Settlement pursuant to the terms of the Preliminary Approval Order. (Exhibit B, Affidavits of Mailing of Notice.) To date, no member of the Class has objected to any terms of the Settlement.

4.  The purpose of this declaration is to set forth the background of this Action and its procedural history, the factual investigation and prosecution of the case, the negotiations that led to Settlement, the notice process, the reasons why the Settlement should be

---

[1] Defendants are Stefani Germanotta (aka "Lady Gaga"), Ate My Heart Inc., Mermaid Music, LLC, House of Gaga Publishing, Inc., Bravado International Group Merchandising Services Inc., Live Nation Entertainment Inc., Live Nation Merchandise Inc., and Universal Music Group Inc.

[2] All persons who purchased a Pray for Japan wristband from one or more of the Defendants during a period from March 11, 2011 through the date of final order of the Court, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administration, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or Claiming under any or each of them.

approved, the factors supporting awards of attorneys' fees and reimbursement of litigation expenses as requested, and the reaction of the Class to the Settlement, Counsel's fees and expenses applications.

## I. PRELIMINARY STATEMENT

5. On June 24, 2011, Plaintiff filed the Complaint alleging, *inter alia*, that the Defendants misrepresented the nature of the funds tendered for the wristbands at issue; by representing that "all proceeds" derived from the wristbands would be donated to the relief effort for victims of the Japanese tsunami of 2011, to individuals and to the public at large. Defendants failed to allocate the funds as claimed. Additionally, consumers were taxed for their donations wrongfully, and the wrongfully-levied taxes were not forwarded to the appropriate taxing authorities in the appropriate time frame.

6. Plaintiff alleged in the Complaint that Defendants made numerous public statements that "all proceeds" from the sale of the "Pray for Japan" wristband sales would be given to charity to aid the tsunami victims.

7. Plaintiff challenged the distribution of the proceeds of the sales, alleging that the Defendants failed to provide all of the proceeds from the sale to the charities as promised.

8. The parties' counsel subsequently engaged in extensive arm's-length negotiations concerning a possible settlement of the Action, during which time Plaintiff's Counsel requested that additional disclosures be made outlining accounting of the proceeds from the sale, distribution and costs involved. As a consequence of protracted arm's-length negotiations, Defendant's provided requested information and the Plaintiff had the documentation reviewed by accountants. The Supplemental Disclosures provided additional information concerning the costs incurred by Defendants, additional

information and analysis concerning the full amount of proceeds received by Defendant and additional information regarding sums sent to charities.

## II. HISTORY OF THE LITIGATION

9. On March 11, 2011, a 9.0 magnitude earthquake struck northeast Japan near Sendai, triggering a tsunami wave and causing widespread devastation. Defendants marketed and distributed the wristbands at issue ("Wristband(s)") to the public in a well-publicized effort to alleviate the destruction caused by the earthquake in Japan. Defendants used the Wristband to encourage donations to this cause ("Relief Effort"). Defendant Lady Gaga, with the other Defendants, affirmatively represented via internet video postings and various other media outlets that "all proceeds" from the Wristbands would go to aid in Japan by stating, "All proceeds go directly to Japan Relief Efforts." ("Subject Funds").

10. On June 24, 2011 Plaintiff filed the Complaint, alleging, *inter alia*, that Defendants misrepresented the nature of the funds tendered for the Wristbands to individuals and to the public at large by representing that "all proceeds" derived from the Wristbands would be donated to the Relief Effort and that Defendants failed to allocate the funds as claimed.

11. After service of the Complaint, Plaintiff's Counsel requested expedited discovery concerning the sales figures, costs and donation record from Defendants' Counsel. As a result, Defendants produced documents on an expedited basis which were subsequently reviewed by Plaintiff's Counsel (subject to a protective order). Plaintiff's Counsel also reviewed all relevant and numerous publicly-available reports and news stories.

### III. SETTLEMENT PROCESS AND NEGOTIATIONS

12. Counsel for the parties engaged in extensive arm's-length negotiations concerning a possible settlement of the Action. Counsel corresponded via letter, telephone and e-mail over the course of several months. The parties recognized the time and expense that would be incurred by further litigation of the Action and the uncertainties inherent in such litigation. As a consequence of protracted negotiations, and in consideration for settlement of the claims alleged in the complaint, the parties reached an agreement in principle.

13. On June 25, 2012, this Court preliminarily approved the Settlement and directed the instant proceedings.

### IV. THE SETTLEMENT TERMS

14. In consideration for the full settlement and release of all Settled Claims (as defined in the Stipulation), Defendants agreed to pay an additional sum of $107,500.00 to one or more charities of Defendant's choosing related to the March 2011 Japanese earthquake and tsunami. As discussed in detail below, the Supplemental Disclosures provided additional information concerning the background of the subject transactions, additional information and analysis concerning the costs of production, and income received from sales and donations tendered. While Defendants have reasserted a lack of wrongdoing in the settlement terms, it must be acknowledged that the filing and prosecution of claims and discussions with Plaintiff's Counsel were the sole cause of Defendants' decision to agree to the Settlement Terms.

15. Since disseminating the notice to 67,727 claimants, the vast majority of feedback from class members has been incredibly positive. Class members are satisfied with the

concept that the proceeds of this case are going to charitable organizations to aid the tsunami victims and with the additional donation as a means to resolve this controversy. Indeed, not one class member has voiced any objection to the terms of settlement.

## V. ATTORNEYS' FEES AND EXPENSES

16. After the parties negotiated the Settlement Terms, Counsel engaged in good faith negotiations in an effort to agree upon attorneys' fees and expense. As a result of these negotiations, the parties have agreed that Plaintiff will apply to the Court for attorneys' fees in the amount of $107,500 to be paid by Defendants, subject to the Court's approval, and Defendants will not oppose such request.[3] The negotiated amount of attorneys' fees reflects the parties' experience as to what is an appropriate fee under the circumstances of this litigation, including the result achieved for the benefit of the Class.

17. Before the parties agreed on the terms of the Settlement, Plaintiff's Counsel conducted discovery to confirm the reasonableness of the proposed Settlement and the terms agreed upon. Plaintiff's Counsel then conducted two confirmatory interviews.

18. Plaintiff's Counsel interviewed with Jack Zwick, Certified Public Accountant, in Southfield, Michigan. Plaintiff's Counsel reviewed the following issues with Mr. Zwick: (a) his financial background; (b) the history of his role as CPA; (c) the costs involved in the Pray for Japan wristband production and distribution; (d) the proceeds received from the production and distribution of the Pray for Japan production and distribution; (e) the funds tendered to charitable organizations from Defendant's documents and public records; (f) his views on the viability and veracity of the proposed settlement terms; (g) his views on the viability of any continued negotiation; and (g) his confirmation of the accuracy of the Disclosures.

---

[3] $7,500 of which will be paid to Plaintiff as an incentive award.

19. Plaintiff's Counsel also interviewed Duane Banyai, Certified Public Accountant, in Southfield, Michigan. Plaintiff's Counsel reviewed the following issues with Mr. Banyai: (a) his financial background; (b) the history of his role as CPA; (c) the costs involved in the Pray for Japan wristband production and distribution; (d) the proceeds received from the production and distribution of the Pray for Japan production and distribution; (e) the funds tendered to charitable organizations from Defendant's documents and public records; (f) his views on the viability and veracity of the proposed settlement terms; (g) his views on the viability of any continued negotiation; and (g) his confirmation of the accuracy of the Disclosures.

## VI. PRELIMINARY APPROVAL

20. On June 5, 2012, Plaintiff's Counsel filed a stipulation of settlement, inclusive of a motion for preliminary approval of the settlement as well as a motion to certify the class. The pleadings were amended on August 15, 2012, and on August 28, 2012 the Court entered the Preliminary Approval Order: (i) preliminarily approving the Settlement; (ii) setting October 9, 2012 for the final hearing for purposes of considering final approval of the Settlement; (iii) approving the form of the Notice of Pendency of Class Action, Stipulation of Settlement, Settlement hearing and Right to Appear (the "Notice"); and (iv) ordering the parties to disseminate the Notice to the Class. Notice was subsequently disseminated pursuant to the Preliminary Approval Order. *See* Exhibit C.

## VII. LEAD COUNSELS' APPLICATION FOR ATTORNEYS FEES AND EXPENSES

21. As compensation for their efforts and on behalf of the Class in achieving this Settlement, Plaintiffs' Counsel respectfully requests that the Court award counsel and attorneys' fees of $104,370.00 and expenses in the amount of $10,710.74. The award is well within the

range of fees customarily sought by (and awarded to) counsel in similar contingency fee litigation in this jurisdiction.

22. As set forth in the Affidavit of Alyson Oliver in Support of an Award of Fees and Expenses filed herewith as Exhibit D, Oliver Law Group, P.C. worked approximately 364.75 hours on this litigation, incurring $104,370.00 in fees. It also incurred expenses of $10,710.74.

23. I, along with other attorneys at my firm, have participated in numerous facets of the litigation, including the comprehensive investigation of facts, the review of documents relating to the Defendants, the drafting of the Complaint, legal research, confirmatory depositions, numerous discussions and consultations with co-counsel and Defendants' counsel, discussion of litigation strategy, settlement overtures and strategy as to the settlement terms themselves, among other tasks.

24. I also make this declaration in support of The Oliver Law Group, P.C.'s ("Firm") application for an award of attorneys' fees for services rendered to the Class in the above-captioned litigation, and for reimbursement of expenses reasonably incurred in the course of such representation. The time expended in preparing this affidavit and application is not included in this request. To be clear, Plaintiffs' Counsel seeks reimbursement only for fees and expenses incurred in the prosecution of this action for the benefit of the class; Plaintiff's Counsel seeks no reimbursement or compensation for its time incurred in preparing the final approval papers or appearing at the final approval hearing.

25. The lodestar calculation referenced above, and attached as Exhibit E, is based on my Firm's regular, current rates charged for their services in other litigation. The schedule was prepared from contemporaneous, daily time records regularly prepared and

maintained by my Firm, which are available at the request of the Court. Again, time expended in preparing this application for fees and reimbursement of expenses that has not been included in this request.

26. The hourly rates for the attorneys and professional staff in my Firm included in Exhibit E are the same as the Firm's lodestar figure, and are based upon the Firm's billing rates. Rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my Firm's billing rates.

27. As detailed on the attached Exhibit F, my Firm has incurred a total of $10,710.74 in un-reimbursed expenses in connection with the prosecution of this litigation.

28. The expenses incurred in this action are reflected on the books and records of my Firm. These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

29. Plaintiffs' Counsel has extensive experience litigating complex actions, have achieved significant acclaim for their work, and maintain impeccable professional credentials. The experience of Plaintiffs' Counsel enabled them to identify this case's complex issues and to formulate strategies to prosecute if effectively and expeditiously. At the same time, the national reputations of Plaintiffs' Counsel as preeminent in the complex litigation arena supplied leverage in settlement negotiations, as Defendants understood their opponents were tenacious and prepared to take this matter to trial as set forth in Exhibit A.

30. After reaching agreement on the Settlement Terms, the parties' counsel negotiation attorneys' fees. Defendants agreed that they would not object to a petition for fees in the amount requested. Defendants' Counselors are known for being top-tier attorneys

9

representing sophisticated parties. Defendants had every incentive to negotiate the lowest possible award of fees and costs.

31. Plaintiff achieved increased donations and decreased risk through hard-fought negotiation with Defendants. The interests of the Class were substantially advanced by Plaintiff's action to ensure that every dollar that could be allocated to charity from the sale of these products was donated.

32. The Class received significant benefits as a consequence of the efforts of Plaintiff's Counsel, who voraciously advocated for the rights of the class members and succeeded in eliciting the additional information described above, without which the additional donations would not have been possible.

33. To date, Plaintiff's Counsel has received no compensation for its effort in this action, which was undertaken on a wholly contingent basis.

34. Counsel assumed tremendous risk in undertaking this litigation on a contingent fee basis. Counsel funded the litigation and negotiation, even though success was far from certain and with the knowledge that counsel alone bore the risk of recovery inherent in litigation. Attorneys expended tens of thousands of dollars to vindicate the rights of the Class to be given the benefit of their bargain, by conducting expedited discovery and vigorously advocating for the relief sought and ultimately achieved.

35. Counsel respectfully submits that the fee award should compensate Counsel for the risk that their investments of time and money-investments made on behalf of the Class and in lieu of other investment opportunities-would be lost.

36. Here, Plaintiff's Counsel has expended 364.75 hours representing $104,370.00 in attorney and paralegal time to, *inter alia*, investigate, draft the complaint, conduct

discovery, engage in arm's-length negotiations, achieve the Settlement Terms and receive preliminary approval of the Settlement.[4]

37. Plaintiff's Counsel achieved the Settlement Terms only after: (i) investigating and researching the Action; (ii) drafting the complaint; (iii) reviewing the expedited discovery; (iv) consulting with certified public accountants; (v) submitting numerous demands concerning to Defendants' Counsel. These services, among others, were all reasonable and necessary to effectively prosecute this Action.

38. Plaintiff's Counsel's rates are the competitive market hourly rates in their respective legal communities for complex litigation and necessarily reflect the reputation, experience, skill, and successful records of Plaintiff's Counsel in other matters. Furthermore, Plaintiff's Counsel sought to reduce duplication of effort and, when appropriate, utilized the services of paralegals and associates to prosecute the Action.

39. The litigation and subsequent Settlement of this matter required Plaintiff's Counsel to identify critical but undisclosed information by analyzing complex financial and legal information.

40. Counsel worked diligently on behalf of Plaintiff and the Class, reviewing and replicating the complex financial calculations used by Defendants where possible and worked closely with a financial expert to fully understand the accounting and valuation nuances.

41. Plaintiff's Counsel faced formidable opposition by skilled lawyers from a highly respected firm with significant experience in complex litigation. Defendants' Counsel are highly regarded in defending actions such as these and demonstrated that they would

---

[4] Plaintiff's Counsel's time and expenses do not include any time incurred in preparing these final approval papers of appearing at the final approval hearing (or any costs associated with either). Plaintiff's Counsel's total lodestar and expenses will exceed the requested fee amount.

fight aggressively at every stage of the litigation. Thus, the successful prosecution of this care required a high degree of skill and dedication by Plaintiff's Counsel.

42. Even in the face of formidable opposition, Plaintiff's Counsel was able to develop their case fully and to press Defendants into an excellent Settlement. The Settlement is a direct result of Plaintiff's Counsel's experience, reputation, and ability.

## VIII. CONCLUSION

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: October 4, 2012

/s/ Alyson Oliver_____
Alyson Oliver (P55020)
**Oliver Law Group PC**
950 W. University Drive, Suite 200
Rochester, MI 48307
(248) 327-6556
Attorney for Plaintiff